# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JULIE VOEKS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>CLIENT SERVICES INC.,<br><br>    Defendant. | Case No.: 18-cv-790<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from her arose from an agreement, or series of agreements, to defer payment.

6. Defendant Client Services, Inc. ("CSI") is a foreign business corporation with its principal offices located at 3451 Harry S. Truman Blvd, St. Charles, Missouri 63301.

7. CSI does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. CSI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CSI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. CSI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about November 29, 2017, CSI mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this Complaint as Exhibit A.

12. The alleged debt referenced in Exhibit A was associated with a "Home Depot" store-branded credit card account, and the alleged debt was incurred for personal, family, or household purposes, including purchases of household goods from Home Depot stores.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer.

2

14. Upon information and belief, Exhibit A is a form debt collection letter, used by CSI to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A was the first written communication CSI sent to Plaintiff regarding this alleged debt.

16. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

17. Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer as to the amount of the debt CSI is attempting to collect from her.

18. The header in Exhibit A contains the following:

> CURRENT CREDITOR: Citibank, N.A.
> ACCOUNT NUMBER: XXXXXXXXXXX1275
> NEW BALANCE: $343.18
> MINIMUM PAYMENT DUE: $191

19. The body in Exhibit A contains the following:

> As of the date of this letter, the balance due is $343.18. On the date you make a payment, the balance due may be greater because of interest or other charges. If an adjustment is necessary after we receive payment, we will attempt to contact you.

20. Exhibit A is confusing, false and misleading to the unsophisticated consumer. The consumer would have no way to know whether CSI is collecting the entire balance of $343.18 or just the $228 that was represented to be the "Minimum Payment Due."

21. The header in Exhibit A represents the amount "due" to be $191, but the body in Exhibit A represents that "as of the date of this letter, the *balance due* is $343.18."

3

22. Upon information and belief, $343.18 is not the "balance *due*." The $152.18 difference between the credit card account balance and the "minimum payment due" was not due on the date CSI mailed Exhibit A to Plaintiff.

23. On a credit card account, the amount "due" and the amount "owing" are different concepts. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *see also*, *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector violates the FDCPA by confusing consumer or misleading the consumer to believe it is collecting portions of the balance which "might not yet be due, let alone overdue.").

24. CSI compounds the confusion by stating that Citibank placed the "account" for collections, and by stating that the amount "due" is both the minimum payment amount, $191, and the balance amount, $343.18.

25. CSI also exacerbates the confusion by failing to state the amount CSI is attempting to collect on the payment remittance slip that is included with Exhibit A.

26. It is not unusual for banks to hire a debt collector to collect only the "past due" portions of a credit card account, *i.e.,* the missed payments of and fees, rather than the entire balance, and in fact may be improper for a bank to engage a third-party debt collector to attempt to collect portions of the account which are not yet due. *See Barnes v. Advanced Call Ctr. Techs., LLC*, 493 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector] can be the 'amount of the debt' under § 809(a)(1).").

27. The different amounts that Exhibit A simultaneously alleges to be "due" render Exhibit A confusing and misleading to the unsophisticated consumer, who would not be able to determine, or would be confused as to the amount CSI was actually attempting to collect.

28. Moreover, under *Barnes*, CSI cannot attempt to collect the entire balance that is owed to Citibank because "only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ." 493 F.3d at 840; *see also*, 15 U.S.C. § 1692e(2)(a) (prohibiting false and misleading statements about the "character, amount, or legal status" of the debt).

29. Upon information and belief, the statement that $343.18 is "due" is false and misleading. The entire credit card balance was not "due" when CSI mailed Exhibit A to Plaintiff. The unsophisticated consumer, however, would not know this.

30. Upon information and belief, Citibank had not accelerated the balance of Plaintiff's account as of the date of Exhibit A.

31. In fact, on or about November 23, 2017, just a few days before CSI mailed Exhibit A to Plaintiff, Citibank mailed Plaintiff an account statement regarding the same alleged Citibank credit card account. A copy of this account statement is attached to this complaint as Exhibit B.

32. Exhibit B contains the following representations:

| Payment Information | |
|---|---|
| New Balance | $343.18 |
| Minimum Payment Due | $191.00 |
| Payment Due Date | December 20, 2017 |

5

33. Exhibit B, mailed on or about November 16, 2017, unequivocally states that the "Minimum Payment Due" is $191.00, not $343.18, which is only referred to as the "New Balance" by Exhibit B, but also referred to as the "balance due" by Exhibit A.

34. Exhibit B thus seeks to collect only the "Minimum Payment Due" amount of $191 and not the "New Balance" amount of $343.18.

35. On or about January 3, 2018, CSI mailed another debt collection letter to Plaintiff, regarding this same alleged Citibank credit card account. A copy of this letter is attached to this complaint as Exhibit C.

36. Upon information and belief, Exhibit C is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer.

37. Upon information and belief, Exhibit C is a form debt collection letter, used by CSI to attempt to collect alleged debts.

38. Exhibit C contains the following text: "We are offering you a settlement amount of $193.00 to settle this THE HOME DEPOT account for less than balance due."

39. Exhibit C also includes "MINIMUM PAYMENT DUE: $238."

40. Exhibit C is facially contradictory. In one place it states that the consumer can settle the debt for $193.00, but also states that the "minimum payment due" is actually greater than $193.00.

41. The unsophisticated consumer would be confused and misled by the apparent contradiction between the amount offered to settle the debt and the amount that Exhibit C states is the "minimum payment due."

42. The consumer would not know whether CSI would accept a $193 payment, as it is substantially less than the $238 amount represented to be the "minimum payment."

43.     The contradictory and misleading terminology CSI employed in <u>Exhibit C</u> actually encourages the consumer to make a payment *greater than* the settlement amount to avoid the chance that payment of the smaller amount---the settlement offer---would be rejected as insufficient.

44.     Alternatively, the unsophisticated consumer would wonder whether payment of $238.00 would actually resolve the account in full, or would only resolve the portion of the balance that was the "minimum payment due."

45.     Moreover, <u>Exhibit C</u> also contains contradictory statements about the amount actually due as of the date <u>Exhibit C</u> was mailed:

> RE: Citibank, N.A.
> ACCOUNT NUMBER: XXXXXXXXXXX1275
> NEW BALANCE: $385.96
> MINIMUM PAYMENT DUE: $238
> . . .
> As of the date of this letter, the balance due is $385.96. If on the date you make a payment, the balance due is greater because of interest or other charges, our office will honor the above settlement offer if received in our office by the above due date.

46.     <u>Exhibit C</u> confuses and misleads the unsophisticated consumer because the header in <u>Exhibit C</u> implies that only the "minimum payment" is due as of the date of <u>Exhibit C</u> but the body in <u>Exhibit C</u> states that "the balance due is $385.96."

47.     Thus, in addition to the confusion caused by the contradiction between the "minimum payment due" and the "settlement amount," which was less than the minimum payment, the unsophisticated consumer would be confused and misled as to whether the entire balance, or only a portion thereof, was due as of the date of <u>Exhibit C</u>.

48.     The unsophisticated consumer would be confused and misled as to whether the balance of the account had been accelerated.

7

49. The unsophisticated consumer would be confused and mislead as to the amount CSI was attempting to collect, and whether CSI was attempting to collect the entire balance or just a portion thereof.

50. The unsophisticated consumer would be confused and misled as to whether the settlement offered in Exhibit C actually resolved the account in full, or only resolved the portion of the balance represented by the "minimum payment due."

51. Upon information and belief, as of the date of Exhibit C, Citibank had not accelerated the balance of Plaintiff's account.

52. On or about December 24, 2017, approximately one week before CSI mailed Exhibit C, Citibank mailed Plaintiff an account statement, stating that the "Minimum Payment Due" was $238.00 and that the "Payment Due Date" was January 20, 2018. A copy of this account statement is attached to this complaint as Exhibit D.

53. Exhibit D contains the following representations:

| | |
|---|---|
| New Balance | $385.96 |
| Minimum Payment Due | $238.00 |
| Payment Due Date | January 20, 2018 |

54. Exhibit D, mailed on or about December 24, 2018, states that the "past due amount" is $285.00, not $667.09, the "balance due" stated in Exhibit C.

55. Upon information and belief, Citibank would not have accelerated the balance of Plaintiff's account until on or after the January 20, 2018 "Payment Due Date" stated in the account statement Citibank mailed to Plaintiff.

56. Citibank also could not have accelerated Plaintiff's account balance until it sent her a "notice of right to cure default" and the time to cure the default had expired. Wis. Stat. §§ 425.104, 425.105.

8

57. Notwithstanding the representation in Exhibit C that the "As of the date of this letter, the balance due is $385.96," the balance of the account was not due.

58. Exhibits A & C equivocate as to the amount CSI is actually attempting to collect.

59. Exhibits A & C indicate that CSI is actually attempting to collect the entire account balance when the entire balance is not "due."

60. Upon information and belief, the purpose of CSI's conduct --- equivocating as to the amount it is hired to collect --- is to increase its profits under false pretenses.

61. Upon information and belief, CSI, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.").

62. Upon information and belief, if a consumer pays CSI an amount greater than the "minimum payment due" or the "settlement amount," CSI is still entitled to retain a portion of that recovery.

63. Plaintiff was confused and misled by Exhibits A & C.

64. The unsophisticated consumer would be confused and misled by Exhibits A & C.

### *The FDCPA*

65. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3

9

(E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13

(N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

66. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

67. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

68. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

11

69. 15 U.S.C. § 1692e(5) specifically prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken

70. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

72. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

73. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

74. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date the letter is sent to the consumer, and must state this amount in a manner that would not confuse the unsophisticated consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Chuway*, 362 F.3d at 948 ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.").

*The WCA*

75. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

76. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

77. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

78. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

79. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

80. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

13

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

81. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

82. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

83. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

84. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. CSI represented the amount of the debt that CSI was attempting to collect in a confusing and misleading manner by contradictorily representing that the amount "due" was both

the "minimum payment" and the entire balance of the account. *See Chuway*, 362 F.3d at 947-48; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

87. The unsophisticated consumer would be confused as to whether CSI was attempting to collect only the "Minimum Due" or the total balance.

88. CSI overstated the amount actually "due" by misrepresenting that a portion of the credit card account balance was "due" when it was not.

89. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II -- FDCPA

90. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Exhibit C provides a purported "settlement offer," but that offer is misleading, as the amount necessary to effectuate the settlement is unclear. The consumer would be confused as to whether CSI, or the creditor, would accept payment of a "settlement amount" that was less than the "minimum" payment.

92. Exhibit C provides a purported "settlement offer," but that offer is misleading, as the amount actually resolved in the event the consumer tenders payment of the settlement amount is unclear. The consumer would be confused as to whether paying the settlement amount would resolve the account in full, or would only resolve the portion of the balance represented by the "minimum payment" amount, in which case CSI could attempt to collect the portions of the balance that were not yet due.

93. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT III -- WCA

94. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. CSI represented the amount of the debt that CSI was attempting to collect in a confusing and misleading manner by contradictorily representing that the amount "due" was both the "minimum payment" and the entire balance of the account. *See Chuway*, 362 F.3d at 947-48; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

96. The unsophisticated consumer would be confused as to whether CSI was attempting to collect only the "Minimum Due" or the total balance.

97. Defendant attempted to collect portions of the balance that were not yet due.

98. Defendant violated Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

99. Plaintiff brings this action on behalf of three classes.

100. Class I consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) where the collection letter in the form represented by Exhibit A was mailed between May 23, 2017 and May 23, 2018, inclusive, (e) and was not returned by the postal service.

101. Class II consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) offering to settle a Citibank debt for an amount less than the "Minimum Payment Due," (d) where the Citibank debt CSI was attempting to collect was incurred for personal, family or household purposes, (e) and the collection letter in the form represented by Exhibit C was mailed between May 23, 2017 and May 23, 2018, inclusive, (e) and was not returned by the postal service.

102. The classes are so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

103. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is Defendant violate the FDCPA and WCA.

104. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

105. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

106. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

107. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 23, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)

Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com